UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 5:12CR24** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **DARNELL C. BUTCHER,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Before the Court is Defendant Darnell Butcher's Motion to Reduce Sentence for

Immediate Compassionate Release due to COVID-19 Circumstances.  (Doc. 122).  For the

following reasons, Defendant's Motion is **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

On January 11, 2012, a Grand Jury indicted Defendant with one count of Felon in

Possession of Firearms and Ammunition, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2);

and one count of Possession with Intent to Distribute Crack Cocaine, a violation of 21 U.S.C. §

841(a)(2) and (b)(1)(C).

On September 27, 2012, a Jury found Defendant guilty of both counts.  On February 5,

2013, the Court sentenced Defendant to 240 months imprisonment and 5 years supervised

release.  Defendant is currently serving his imprisonment at Elkton Federal Correctional

Institution.

On April 24, 2020, Defendant filed his Motion and request for home confinement.  (Doc. 122).  Defendant argues that the presence of COVID-19 and his current medical conditions justify his compassionate release to home confinement.  The Government opposed Defendant's request on May 20, 2020.  (Doc. 123).

## II. LAW & ANALYSIS

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  However, in certain circumstances, a defendant may ask the court to modify a sentence, otherwise known as "compassionate release."  *Id.* at § 3582(c)(1)(A).  Before doing so however, one of two things must occur: either defendant has exhausted all administrative rights to appeal the Bureau of Prison's failure to bring a motion on his behalf or defendant has waited thirty days since he asked the warden of the facility to file a request on his behalf.  *Id.*

In other words, prisoners must first exhaust their administrative remedies before seeking a district court's involvement.  *See United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020); *United States v. Ciccone*, 2020 WL 1861653 (N.D. Ohio Apr. 14, 2020) (Polster, J.) (the amended § 3582(c)(1)(A) did not alter the requirement that prisoners must first exhaust administrative remedies before seeking judicial relief) (citations omitted).  Moreover, courts cannot create exceptions to the mandatory exhaustion requirement.  *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016) ("mandatory language means a court may not excuse a failure to exhaust, even to take such [special] circumstances into account"); *United States v. Alam*, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020) (collecting cases holding district courts cannot craft exceptions to exhaustion requirements in light of the COVID-19 pandemic).

Here, Defendant concedes he "has not met the exhaustion requirement required by the statute" before seeking the Court's involvement.[1]  (Doc. 122, PageID: 1423).  However, Defendant asks the Court to waive the exhaustion requirement.  Relying on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019), Defendant claims the Court may waive the exhaustion requirement in certain circumstances.  Defendant then cites three circumstances where failure to exhaust may be excused.  But Defendant's reliance on *Washington* is mistaken.

Both *Washington* and *McCarthy v. Madigan*, 503 U.S. 140 (1992)—the Supreme Court case that *Washington* relied on—dealt with Federal statutes that did not "expressly mandate the exhaustion of administrative remedies."  *Washington*, 925 F.3d at 115; *McCarthy*, 503 U.S. at 149.  The same is not true here.  Section 3582(c)(1)(A) *expressly requires* a defendant to "exhaust[] all administrative rights."  18 U.S.C. § 3582(c)(1)(A); *Raia*, 954 F.3d 594.  Defendant concedes this point.  (Doc. 122, PageID: 1423).  As both *Washington* and *McCarthy* make clear: "[w]here Congress specifically mandate[s it], exhaustion is required."  *McCarthy*, 503 U.S. at 144; *Washington*, 925 F.3d at 116.

Congress 'clearly mandated' exhaustion in § 3582(c)(1)(A).  And despite other district courts holding otherwise due to COVID-19, this Court will not "engraft an unwritten 'special circumstances' exception onto" § 3582(c)(1)(A)'s exhaustion requirement.  *Ross*, 136 S.Ct. at 1862.

The Court understands the general risks that COVID-19 presents to certain populations, including those in detention facilities.  However, requiring that Defendant first exhaust his

---

[1] While it is true Defendant sought administrative relief previously, Defendant based his request on his career-offender status and not COVID-19.  (*See* Docs. 123-1 & 123-2).  Generally, "courts require administrative issue exhaustion…because it is usually 'appropriate under an agency's practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there."  *Sims v. Apfel*, 530 U.S. 103, 109 (2000) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36-37 (1952)).

administrative remedies not only upholds Congressional intent, but also protects "administrative agency authority" and "promotes efficiency."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  Whether through its own policies or by court order, the Bureau of Prisons is releasing vulnerable inmates and lessening the overall population at Elkton.[2]  Allowing the Bureau to exercise its authority and expertise in this instance is even more important.  *See generally*, *Raia*, 954 F.3d 594.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion (Doc. 122) is **DENIED WITHOUT PREJUDICE**.  The Court may consider the merits of Defendant's Motion after he properly exhausts his administrative remedies.

**IT IS SO ORDERED.**

> s/ Christopher A. Boyko
> **CHRISTOPHER A. BOYKO**
> **Senior United States District Judge**

**Dated: May 22, 2020**

---

[2] For example, the court in *Wilson, et al. v. Williams, et al.*, 4:20CV794 (N.D. Ohio) (Gwin, J.) ordered the Bureau to produce a list of inmates who would be considered vulnerable under the court's defined class.  (*See Wilson*, Doc. 22).  The Bureau identified over 835 inmates in the defined class, including Defendant.  (*See Wilson*, Doc. 35-1, PageID: 532).  Thus, there is some evidence to believe that, had Defendant followed the proper procedure of administrative exhaustion, the Bureau would have properly considered his request.